# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**YVONNE R. BARCLAY,**  Case No. 1:19 CV 1408

    Plaintiff,

    v.  Magistrate Judge James R. Knepp II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.  MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Plaintiff Yvonne R. Barclay ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB")[1] and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 12). For the reasons stated below, the undersigned affirms the decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff filed for DIB in August 2016, and SSI in November 2016, alleging a disability onset date of January 1, 2013. (Tr. 211-16). Her claims were denied initially and upon reconsideration. (Tr. 159-65, 178-82). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 90). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on May 17, 2018. (Tr. 39-68). On October 11, 2018, the ALJ

---

1. Plaintiff's DIB claim was made for the purpose of establishing eligibility for Medicare coverage as a Medicare Qualified Government Employee. (Tr. 155-58, 211-12). To be eligible for Medicare coverage, the claimant must prove she was disabled during the period of time for which she had insured status for Medicare eligibility purposes. *See* 42 C.F.R. §§406.12, 406.15.

found Plaintiff not disabled in a written decision. (Tr. 16-33). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-3); *see* 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. Plaintiff timely filed the instant action on June 19, 2019. (Doc. 1).

## FACTUAL BACKGROUND[2]

Personal Background and Testimony

Born in 1968, Plaintiff was 44 years old on her alleged onset date. *See* Tr. 211. She had past work as a cashier, receptionist, security guard, dispatcher, and chocolate manufacturer. (Tr. 43-45). She last worked full-time doing data entry for the City of Cleveland. (Tr. 47-48). Plaintiff was officially laid off from that position but, prior to that date, she took leave under the Family Medical Leave Act ("FMLA") due to excessive absences for migraines. (Tr. 48-49).

Plaintiff arrived at the hearing with her right hand bandaged in a splint. (Tr. 43). She shielded her eyes at times due to fear that the bright lights would trigger a migraine. (Tr. 49).

Plaintiff had migraines "at least two or three times" per week with each lasting "a day or two". (Tr. 50). She woke up with a headache "every day". *Id*. If she did not take her medications, these daily headaches turned into migraines. *Id*. On days that she had a migraine, Plaintiff stayed in bed, in the dark; she did not get dressed or shower. (Tr. 51).

Plaintiff had tendonitis, ulnar nerve damage, and carpal tunnel syndrome in her right hand and wrist. *Id*. Her typing was "not at all like it used to be" and she could not write with her right hand. *Id*. Plaintiff's physical therapist provided her with an apparatus that made it easier to grip pens, forks, and spoons. (Tr. 51-52).

---

2. The undersigned summarizes the portions of the record relevant to the arguments raised by Plaintiff. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (arguments not raised in opening brief considered waived).

Plaintiff had problems with her right arm and shoulder, resulting from a torn rotator cuff. (Tr. 53-54). Providers told her there was a "50/50" chance that surgery would not improve this pain. (Tr. 56). She also experienced neck pain (Tr. 55), and had a history of pulmonary emboli (Tr. 56).

Plaintiff had difficulty dressing herself (Tr. 52-53), could not prepare meals (Tr. 53), and did not go to the grocery store alone. (Tr. 57).

Relevant Medical Evidence

In January 2014, Plaintiff established care with the MetroHealth Clinic, reporting a history of pulmonary emboli and migraines. (Tr. 372-73). She reported taking Topamax for her migraines which helped. (Tr. 373). Providers continued her prescription. (Tr. 374). In August, Plaintiff treated at the emergency room for a migraine which lasted two days; she was ultimately admitted for a pulmonary embolism. (Tr. 356-67). In October, Plaintiff reported her migraines were well controlled on Topamax. (Tr. 343).

At a December 2014 MetroHealth rheumatology visit, Plaintiff reported pain in her chest, hips, right hand, and right shoulder. (Tr. 304-05). On examination, she had limited right shoulder abduction due to pain and a positive impingement test. (Tr. 306). The appearance and movement of her elbows, wrists, and hands were normal with some joint tenderness. *Id*. The physician referred her to physical therapy and prescribed Volatren gel. (Tr. 307).

Plaintiff had her first physical therapy visit later that month (Tr. 299), and attended another in January 2015 (Tr. 297). However, she did not complete the recommended course of six visits due to lack of insurance coverage. (Tr. 286, 301).

Plaintiff returned to MetroHealth for right shoulder pain and headaches in August 2016. (Tr. 290). On examination, Plaintiff had right shoulder pain with extension; she had intact strength

3

and good peripheral pulses. (Tr. 291). Providers continued Topamax, prescribed a trial of Imitrex, and referred Plaintiff to neurology for her migraines; they recommended physical therapy and Tylenol for her shoulder. (Tr. 291-92).

An August 2016 x-ray of the right shoulder revealed no acute fractures, dislocations, abnormal periosteal reaction, or bone destruction were present. (Tr. 384). Plaintiff had "fairly well" maintained joint spaces but had some spurring of the distal acromion and subchondral cystic changes at the level of the greater tuberosity of the proximal humerus. *Id*.

Plaintiff again attended physical therapy for her right shoulder from August to November 2016. (Tr. 283-86, 281-83, 483-84, 550-53, 564-67, 568-70). At her August physical therapy visit, Plaintiff reported working twenty hours per week as a childcare provider; picking up/lifting children increased her shoulder pain. (Tr. 281-82).

Plaintiff treated with Anastasia Rowland-Seymour, M.D., in September 2016. (Tr. 502-05). She reported recurring worsening migraines, right shoulder pain, right wrist pain, and carpal tunnel syndrome in the right hand. (Tr. 502). Plaintiff stated that she recently stopped lifting the children she cared for due to pain. *Id*. On examination, Plaintiff had carpal tunnel syndrome ("CTS") and de Quervain's tenosynovitis on the right side, decreased range of motion in the right shoulder; there was no thenar wasting. (Tr. 504). Dr. Rowland-Seymour diagnosed de Quervain's tenosynovitis ("[l]ikely related to overuse"). (Tr. 505). She instructed Plaintiff to meet with an occupational therapist for her wrist and physical therapist for her shoulder. *Id*. Later that month, Plaintiff told a MetroHealth provider she was looking for work. (Tr. 509).

At a physical medicine clinic visit in October 2016, Plaintiff reported physical therapy improved the range of motion in her neck but her shoulder pain continued and she recently developed right thumb pain. (Tr. 493). She described shoulder pain at 7/10 which throbbed and

radiated to her arm. *Id*. It was aggravated by overhead reaching. *Id*. The physician advised her to continue Tylenol and physical therapy; he ordered an MRI, x-ray and a thumb splint. (Tr. 495).

Plaintiff began occupational therapy in October 2016 and attended through November. (Tr. 491-92, 486-88, 572-74, 583-85, 561-63, 557-60).

An October 2016 MRI of the right shoulder revealed significant bony changes and excrescences at the attachment of the coracoacromial ligament with thickening of the ligament. (Tr. 511-12). Secondary findings included a bursal surface tear and articular surface tear in the distal anterior cuff region with some thickening of the supraspinatus tendon. (Tr. 512). These findings were consistent with markers of impingement. *Id*.

At a December 2016 physical medicine clinic follow-up, Plaintiff reported no change to her shoulder pain. (Tr. 546). She had difficulty completing physical therapy exercises due to pain. *Id*. She described hypersensitivity, pain, and numbness in her right thumb. *Id*. The physician noted some mild edema in this region. (Tr. 548). He advised her to continue Tylenol and continue physical and occupational therapy. (Tr. 549).

Plaintiff saw Dr. Rowland-Seymour again in December 2016. (Tr. 536). She reported more frequent headaches and no improvement in her migraines. *Id*. Dr. Rowland-Seymour prescribed Propranolol and Imitrex. (Tr. 539).

Plaintiff received a right subacromial bursa injection in January 2017. (Tr. 620-21). At a February physical medicine clinic visit, Plaintiff reported the injection only provided one week of relief (Tr. 644). She had normal range of motion in her neck with pain on right rotation and her right shoulder was tender to palpation. (Tr. 648). Providers continued Tylenol and added gabapentin and recommended she continue physical and occupational therapies. *Id*.

Plaintiff returned to Dr. Rowland-Seymour in February 2017 to follow up with her right shoulder pain and migraines. (Tr. 657). Plaintiff reported that the recent injection in her right shoulder improved her range of motion, but her pain remained. (Tr. 658). She also had pain in the back, right side, of her neck which radiated into her right shoulder blade. *Id*. Her hand had not improved. *Id*. On examination, Dr. Rowland-Seymour noted Plaintiff's right shoulder was able to abduct to 90 degrees with pain, an improvement over her prior examination. (Tr. 661). Dr. Rowland-Seymour diagnosed chronic pain and migraines (which she noted were "fairly well controlled") and ordered a cervical MRI. (Tr. 661-62). She advised Plaintiff to take gabapentin before bed. (Tr. 663).

Plaintiff began another course of physical therapy in February 2017 for her neck and shoulder pain. (Tr. 666-71). Later that month, she restarted occupational therapy. (Tr. 675-79).

Plaintiff attended a follow-up appointment at the physical medicine clinic in December 2017 with Michael Harris, M.D. (Tr. 1001-06). She reported continued shoulder pain as well as pain in her right thumb and palm. (Tr. 1001-02). She attended only two physical therapy visits due to lack of insurance coverage. (Tr. 1002). After reviewing Plaintiff's latest MRI, Dr. Harris noted that her "severe" right shoulder pain "outweighs what I expect based on the MRI." (Tr. 1006). He recommended another bursa injection and continued Tylenol use. (Tr. 1005-06).

At a pharmacologic management appointment for mental health issues in February 2018, Plaintiff reported a recent trip to Georgia that was "good overall". (Tr. 1036). She recently tried to generate income by making and selling jewelry; she attended a related conference in Columbus and enjoyed it. *Id*.

In April 2018, Plaintiff saw orthopedic surgeon Stephen Cheng, M.D., reporting continued right shoulder pain. (Tr. 1117-20). Dr. Cheng did not "see that a surgical solution would be a

6

reliable solution for [her] pain." (Tr. 1120). He found "[s]he appear[ed] to have symptoms that [were] greater in magnitude to the findings on imaging". *Id*. Further, she had "limitation of motion and resist[ed] motion which [were] concerning features with respect to prognosis for surgery." *Id*. Dr. Cheng recommended physical therapy. *Id*.

Opinion Evidence

Dr. Rowland-Seymour completed a physical medical source statement in February 2017. (Tr. 597-600). Therein, she described Plaintiff's diagnoses, symptoms, treatments, prescriptions, and clinical findings and offered a "fair" prognosis. (Tr. 597). Dr. Rowland-Seymour opined Plaintiff could walk two to three city blocks without rest due to her pulmonary emboli. (Tr. 598). She could sit for more than two hours at one time and stand for one hour at a time. *Id*. Plaintiff could stand/walk for about four hours total and sit for at least six hours in an eight-hour workday. *Id*. Plaintiff needed to walk for ten minutes approximately every ninety minutes during an eight-hour workday. *Id*. She needed to leave work for the rest of the day should a migraine occur. *Id*. Plaintiff could never lift ten pounds or more and could rarely[3] lift less than ten pounds. (Tr. 599). She could occasionally[4] twist, stoop (bend), crouch/squat, and climb stairs or ladders. *Id*. Dr. Rowland-Seymour opined Plaintiff had significant reaching, handling, and fingering limitations due to a shoulder injury, rotator cuff problems, and CTS. *Id*. She could grasp, turn, and twist objects and engage in fine manipulation bilaterally for 2.5% of an eight-hour workday; she could frontal reach 5% bilaterally and overhead reach with her left arm 5%. *Id*. She could not perform overhead reaching with her right arm. *Id*. Plaintiff would be off-task for 20% of a typical workday due to migraines, CTS, de Quervain's tenosynovitis, and shoulder impingement. (Tr. 600). She

---

3. The form defines "rarely" as "1% to 5% of an 8-hour working day". (Tr. 599).

4. The form defines "occasionally" as "6% to 33% of an 8-hour working day". (Tr. 599).

7

was capable of "moderate stress – normal work" because she was "fairly high functioning". *Id*. Plaintiff's migraines would produce good and bad days and she would be absent approximately two days per month as a result of her impairments. *Id*.

VE Testimony

A VE appeared and testified at the hearing before the ALJ. *See* Tr. 58-66. The ALJ asked the VE to consider a hypothetical individual with Plaintiff's age, education, and vocational background who was limited in the ways she ultimately determined Plaintiff to be. (Tr. 60-62). The VE opined that such an individual could not perform Plaintiff's past work, but could perform work as a school bus monitor, furniture rental consultant, or an investigator. (Tr. 61).

ALJ Decision

In a decision dated October 11, 2018, the ALJ concluded Plaintiff met the criteria for eligibility to apply for Medicare as a disabled individual through September 30, 2020, as a "Medicare qualified government employee". (Tr. 18). She determined Plaintiff had not engaged in substantial gainful activity since her alleged onset date (January 1, 2013). (Tr. 19). Next, the ALJ found Plaintiff had severe impairments of: history of pulmonary embolism, migraines, right shoulder impingement/right rotator cuff tear with tendinitis, degenerative changes of the right shoulder/right AC joint arthritis and arthropathy, degenerative disc disease of the cervical spine with spondylosis and stenosis, cervical radiculopathy, complex regional pain syndrome of the right upper extremity, history of carpal tunnel syndrome on the right, major depressive disorder, anxiety, post-traumatic stress disorder, evidence of old trauma to the knees, and severe allodynia and hyperalgesia. *Id*. However, none of these impairments (alone or in combination) met or equaled the severity of a listed impairment. *Id*. Next, the ALJ concluded Plaintiff had the residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can occasionally push and pull with the right upper extremity. The claimant can occasionally reach on the right. The claimant can frequently handle and finger on the right. The claimant can occasionally crawl. The claimant should never climb ladders, ropes, and scaffolds. The claimant should avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants. The claimant can understand, remember, and carry out simple tasks in a slow to moderately paced environment. The claimant can occasionally tolerate changes in a routine work setting, but changes should be well explained.

(Tr. 21-22). She found Plaintiff unable to perform her past relevant work and was an individual closely approaching advanced age on her alleged onset date. (Tr. 31). There were jobs that existed in the national economy Plaintiff could perform given her age, education, work experience, and RFC. (Tr. 32). Thus, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, from January 1, 2013 through the date of her decision. (Tr. 33).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn

"so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) & 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and

10

meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff raises two objections to the ALJ's decision. First, she contends the ALJ violated the treating physician rule in her evaluation of Dr. Rowland-Seymour's opinion. Relatedly, she next argues that the ALJ's credibility finding is unsupported due, in part, to her flawed assessment of Dr. Rowland-Seymour's opinion. The Commissioner responds that the decision is supported in each instance. For the reasons contained herein, the undersigned affirms.

Treating Physician

Plaintiff first alleges the ALJ violated the treating physician rule when evaluating the opinion of Dr. Rowland-Seymour. Specifically, she argues the ALJ erred by not providing the required "good reasons" for rejecting her opinion and not incorporating the opined limitations into the RFC.

Generally, medical opinions of treating physicians are accorded greater deference than non-treating physicians.[5] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96–2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)). A treating

---

5. Although recent revisions to the CFR have changed the rules regarding evaluation of treating physician opinions, such changes apply to claims filed after March 27, 2017, and do not apply to claims filed prior to that date. *See* Social Sec. Admin., *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5852-53, 2017 WL 168819.

11

physician's opinion is only given "controlling weight", however, if it: (1) is supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) is not inconsistent with other substantial evidence in the case record. *Rogers*, 486 F.3d at 242 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

Importantly, when the physician's medical opinion is not granted controlling weight, the ALJ must give "good reasons" for the weight given to the opinion. *Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)). These reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. (quoting SSR 96-2p, 1996 WL 374188, at *5). When determining weight and articulating "good reasons", the ALJ "must apply certain factors" to the opinion. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id.* While an ALJ is required to delineate good reasons, she is not required to enter into an in-depth or "exhaustive factor-by-factor analysis" to satisfy the requirement. *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

Here, the ALJ summarized Dr. Rowland-Seymour's opinion and gave it "limited weight",

> because such severe and extreme limitations are not supported by the objective medical evidence, findings on examination, or course of treatment. In addition, there is no impairment of the left upper extremity to warrant the limitations on the left. Furthermore, Dr. Rowland-Seymour's opinion is not consistent with the claimant's activities of daily living including some work as a childcare provider.

(Tr. 30-31).

The ALJ first assigned less than controlling weight to Dr. Rowland-Seymour's opinion because it was unsupported by the objective evidence, findings on examination, and course of treatment. This is a good reason for assigning limited weight to the opinion and it is supported by substantial evidence. *Rogers*, 486 F.3d at 242. And, though the ALJ did not include specific citations in this sentence, an ALJ's evaluation is proper where it is "clear which evidence [s]he was referring to." *Hernandez v. Comm'r of Soc Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016). Here, the ALJ highlighted Plaintiff's conservative course of treatment which included medications (Tr. 291-92, 495, 549, 648, 663, 1005-06), physical therapy (Tr. 283, 281, 297, 299, 483, 550, 564, 568), a bursa injection for her shoulder (Tr. 620), and medication (Topamax) for her migraines (Tr. 291-92, 343, 536) throughout her opinion. *See* Tr. 22-31. Conservative treatment is a valid reason to discount an opinion. *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 631 (6th Cir. 2016). The ALJ further cited to a lack of support from objective medical findings and examinations. This is supported by the ALJ's earlier citation to Plaintiff's MRI and statements from two physicians who opined the severity of her symptoms did not coincide with the findings therein. (Tr. 28-29); *see* Tr. 1120 (Dr. Cheng found Plaintiff "appear[ed] to have symptoms that [were] greater in magnitude to the findings on imaging"); *see also* Tr. 1006 (Dr. Harris noted Plaintiff's "severe" right shoulder pain "outweighs what I expect based on the MRI."). The ALJ's next assertion, that the record does not reflect any impairment of Plaintiff's left arm such to warrant the left arm restrictions opined by Dr. Rowland-Seymour, is also supported. Finally, the ALJ explained that Dr. Rowland-Seymour's opinion was not consistent with Plaintiff's activities of daily living, including her work as a childcare provider and some travel. This is supported by the record. *See* Tr. 281-82 (Plaintiff reported working as a childcare provider as recently as August 2016); *see also* Tr. 1036 (Plaintiff reported traveling to Georgia to vacation with family and to

Columbus, Ohio for a jewelry making conference). Discounting Dr. Rowland-Seymour's opinion because it was inconsistent with these portions of the record is also proper. *Rabbers*, 582 F.3d at 660.

Here, the ALJ made accommodations for Plaintiff's shoulder impairment by limiting her to occasional pushing and pulling, reaching, and handling and fingering (Tr. 21), though Plaintiff alleges the ALJ did not go far enough in this respect because Dr. Rowland-Seymour's limitations in these areas warranted a finding of sedentary work (Doc. 15, at 23-24). Importantly, however, the ALJ was not required to adopt or incorporate *any* of Dr. Rowland-Seymour's opined limitations – she is only required to incorporate those limitations into the RFC that she found credible and supported by the record. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Finally, contrary to Plaintiff's assertion, the ALJ gave "obvious consideration" to the regulation governing treating physicians. She did so by declining to assign controlling weight to the opinion because it was unsupported by medically acceptable diagnostic techniques, and not inconsistent with other substantial evidence in the case record. (Doc. 15, at 24-25); *Rogers*, 486 F.3d at 242. And, though Plaintiff points to record evidence suggesting a contrary conclusion, the undersigned must affirm "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. As discussed, the undersigned concludes that the ALJ's decision is supported, the decision must therefore be affirmed.

<u>Subjective Symptom Analysis</u>

Plaintiff next argues the ALJ's credibility assessment is unsupported due, in part, to her flawed assessment of Dr. Rowland-Seymour's opinion and also because she failed to consider Plaintiff's "strong work history". For the following reasons, the undersigned affirms.

14

When a claimant alleges impairment-related symptoms, the Commissioner follows a two-step process to evaluate those symptoms. 20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 16-3p, 2017 WL 5180304, *2-8.[6] First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms, *e.g.*, pain. SSR 16-3p, 2017 WL 5180304, *3-4. Second, the ALJ must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which those symptoms limit the claimant's ability to perform work-related activities. *Id.* at *3, 5-8. To evaluate a claimant's subjective symptoms, an ALJ considers the claimant's complaints along with the objective medical evidence, information from medical and non-medical sources, treatment received, and other evidence. *Id.* at *5-8. In addition to this evidence, the ALJ must consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *Id.* at *7-8. Those factors include daily activities; location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment, other than medication for relief of pain or other symptoms; measures other than treatment a claimant uses to relieve pain or other symptoms, *e.g.*, lying flat on one's back; and any other factors pertaining to a claimant's functional

---

6. SSR 16-3p replaces SSR 96-7p and applies to ALJ decisions on or after March 28, 2016. *See* 2017 WL 5180304, at *1, 13. The ALJ's decision here is dated June 19, 2019 and thus SSR 16-3p applies. SSR 16-3p clarifies the language of the pre-existing standard in SSR 96-7p, 1996 WL 374186 (1996) to the extent that it "eliminated the use of the term 'credibility' in the sub-regulatory policy and stressed that when evaluating a claimant's symptoms the adjudicator will not 'assess an individual's overall character or truthfulness' but instead 'focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities....'" *Huigens v. Soc. Sec. Admin.*, 718 F. App'x 841, 848 (11th Cir. 2017) (quoting *Hargress v. Soc. Sec. Admin.*, 874 F.3d 1284, 1289-90 (11th Cir. 2017) (quoting in part SSR 16-3p)).

limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Although the ALJ must "consider" the listed factors, there is no requirement that she discuss every factor. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009).

The Sixth Circuit has explained, interpreting SSR 96-7p, the precursor ruling, that "an administrative law judge's credibility findings are virtually unchallengeable". *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (internal citation omitted). Nevertheless, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10.

The ALJ correctly summarized the two-step process (Tr. 22), recounted Plaintiff's medical history (Tr. 22-29), and concluded:

> The undersigned finds that the objective medical evidence, clinical findings on examination, and course of treatment in this case are not consistent with disabling physical impairment or disabling pain and are more consistent with the stated residual functional capacity. As recounted above, more than one doctor (Dr. Harris on December 14, 2017 and Dr. Cheng on April 22, 2018) noted that the claimant's symptoms are greater in magnitude to the findings on imaging. As recounted above, the claimant's gait is normal and she has good strength including good grip strength. However, she has pain and some decreased range of motion of the right upper extremity (right shoulder) which warrants some limitations on lifting, carrying, pushing/pulling, reaching, crawling, and climbing ladders, ropes, or scaffolds. On November 10, 2014, the claimant was discharged to home following an unprovoked PE and she was instructed as follows: "no strenuous activity" (1F/57-58). While the claimant has received medical care on a regular basis at MetroHealth, the claimant has not required or received frequent care for any medical condition. From all of this, the undersigned finds that the claimant's symptoms and limitations are not as severe as alleged.

(Tr. 29). The undersigned finds this credibility assessment is supported by substantial evidence. The assessment is supported primarily by the same reasons discussed above related to the ALJ's evaluation of Dr. Rowland-Seymour's opinion. That is, she properly considered the objective

16

evidence, clinical findings, and course of treatment. The ALJ also considered Plaintiff's travel and employment activities. These are among the relevant factors an ALJ must consider under the regulations. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (listing daily activities, type, dosage, and effectiveness of medications, treatments, clinical signs and laboratory findings, and objective evidence as factors to be considered by the ALJ when evaluating symptoms). Further, the ALJ recognized Plaintiff's pain and decreased range of motion in her right shoulder warranted *some* limitations. (Tr. 29). As discussed, she accommodated such by incorporating upper extremity limitations into her RFC. *See* Tr. 21 (RFC limiting Plaintiff to occasional pushing, pulling, reaching, and handling and fingering).

As for Plaintiff's contention that the ALJ did not fully consider her work history as part of the credibility assessment, this argument is without merit. While there is no question that a claimant's positive work history can bolster her credibility, an ALJ is not required to explicitly discuss that work history so long as the ALJ provides other substantially supported reasons to justify her analysis of a claimant's subjective symptoms. *See Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 433 (6th Cir. 2016); *see also Bond v. Comm'r of Soc. Sec.,* 2017 WL 2929480, at *6 (W.D. Tenn.) ("[W]hile a good work history may bolster a claimant's credibility, it alone does not require the ALJ to find a claimant credible."). Even so, the ALJ expressly considered Plaintiff's work history and desire to return to work throughout her opinion. *See* Tr. 22 (ALJ discussed Plaintiff's work with the City of East Cleveland where she was laid off and used FMLA leave for migraines); Tr. 24-25 (ALJ acknowledged Plaintiff reporting she was hopeful to return to work); Tr. 24 (ALJ discussed childcare work); Tr. 29 (ALJ acknowledged Plaintiff was looking for work); *see also* Tr. 43-44 (hearing testimony where the ALJ inquired about Plaintiff's past

17

work as a dispatcher, cashier, security officer, data entry clerk, and chocolate assembly worker). And, as noted, the ALJ provided other supported reasons to justify her credibility assessment.

For these reasons, the undersigned finds the ALJ's credibility assessment supported by substantial evidence and affirms.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB and SSI supported by substantial evidence and affirms that decision.

                                         s/ James R. Knepp II
                                         United States Magistrate Judge